SKELLIE, for use, *vs.* THE CENTRAL RAILROAD AND BANK-
ING COMPANY OF GEORGIA.

1. Where certain testimony was offered as a whole, part of which was relevant and part not, it was not error to reject the whole.
2. If the railroad company agreed to deliver certain melons for plaintiff into the city of Savannah, in due time to transport the same to Boston by a certain steamer, and failed to comply with such agreement, and the melons were, after their arrival too late in Savannah, by his consent, shipped to New York and there sold at a loss, such shipment and sale in New York was for the benefit of the railroad company, and it was their duty to make good the loss.
(a) Plaintiff's declaration, being substantially to the effect just stated, was good as it stood, and while he had a right to amend in form or substance and the court had no right to refuse to allow him to amend, the terms of the amendment which he proposed and which were refused would have put him out of court.
3. Testimony that at the time the bill of lading was delivered by the railroad to plaintiff, at the same time and in the presence and with the consent of the agent of the railroad, a draft was drawn upon the bill of lading by plaintiff in favor of his usees, and the bill of lading and the draft both turned over in the presence of such agent to such usees, who were known by such agent to be the real owners of the bill of lading and the melons, was irrelevant and was properly rejected.
4. Under the testimony in the case, a nonsuit was proper.

May 28, 1888.

Evidence.   Railroads.   Contracts.   Damages.   Before Judge GUSTIN.   Houston superior court.   October term, 1887.

T. O. Skellie, for the use of Cooper & Harper, sued the

Central Railroad and Banking Company for $213.75, with interest, for that, on July 13, 1886, defendant made a contract with plaintiff by which it agreed to receive at Dasher's Station, in Houston county, and thence to transport, by rail and boat, to Boston, Mass., three ·car-loads of watermelons, consigned to J. S. Chamberlain & Co., commission merchants of Boston, who had agreed to pay for the same the sum above stated, if delivered to them at Savannah, by placing the melons on the steamer " Gate City," of defendant's line of steamers, which was to sail on the — day of July, 1886, from Savannah to Boston ; defendant contracting to deliver the melons at Savannah on board that steamer in due time for the trip.    The con. tract between plaintiff, defendant, plaintiff's usees and Chamberlain & Co. was based wholly on defendant's agreement to deliver the melons on .the steamer at Savannah in the time agreed, and this was well-known to defendant at the time, it having, through its agents, actually solicited the shipment of melons on the terms stated.    Relying on defendant's agreement, plaintiff purchased of his usees three car-loads of melons, delivered them to defendant at Dasher's Station, receiving from defendant the bill of lading which is to the court shown, and which plaintiff at once turned over and transferred to his usees.    He drew on Chamberlain & Co. against the bill of lading for the sum which they had agreed to pay for the melons if delivered as above recited.    Defendant, without default on the part of plaintiff or his usees, totally failed to deliver the melons on board the steamer.    Chamberlain & Co. refused to pay the draft because of such non-delivery on the steamer ; whereby defendant became liable, etc.    The defendant pleaded the general issue.

On the trial, the plaintiff introduced three bills of lading, each of the same tenor and effect, dated at Fort

Valley, Georgia, July 13, 1886, each receipting T. O. Skellie for a car-load of melons shipped from Dasher's Station to Boston to J. S. Chamberlain & Co. The bills of lading do not specify over what lines or by what method the melons shall be carried. It is stated that the railroad company is to deliver the goods in good order, losses occurring from the perishable nature or inherent defects of the property excepted; it is also stipulated that the railroad will not be responsible for any loss or damage that may result from any change of destination that may be made, either through the direction of the shipper or owner or his agent or consignee.

The plaintiff also introduced three sight drafts, each for $85, dated Fort Valley, July 13, 1886, drawn by T. O. Skellie on J. S. Chamberlain & Co., Boston, Mass., payable to the order of Cooper & Harper. He further showed that Cooper & Harper agreed to sell to him four car-loads of watermelons, to be shipped by the Central railroad to Chamberlain & Co., Boston, and plaintiff was to give Cooper & Harper a draft on Chamberlain & Co., who were to pay it when the melons were loaded on the steamer "Gate City." One of the cars was loaded, transported and paid for; the other three were loaded by the shippers, who finished loading them the day after the first car left the station, and these three cars missed the steamer. Plaintiff's testimony tended to show that due diligence was exercised in loading the cars, the duty to do which was on the shippers; that Chamberlain & Co. had agreed to pay seven and a half cents apiece for the melons, and 2,850 melons were shipped in the three cars; that the bills of of lading were turned over by Skellie to Cooper & Harper; that the last three car-loads never were delivered in Boston; that they could have gone from Savannah to Boston only by boat; that the boat sailed only once a week; that they would have been ruined if allowed to remain

in Savannah for that length of time; and that Skellie, being notified by the railroad authorities at Savannah that the. melons had been left and requested to give instructions to forward them to New York, did change the consignment of them and had them sent to New York, by reason of which change he received only $38 for the three car-loads, which was about the New York price for them.

He further proposed to prove that Cooper & Harper consented to make the sale to him only on condition that Chamberlain & Co. would accept the drafts; that Chamberlain & Co. agreed to so accept only on condition that the melons would be placed upon the " Gate City " at Savannah for transportation to them; that these facts were. communicated to defendant's agent at Fort Valley, who had solicited the shipment; that after communicating with the authorities at Savannah, this agent assured Skellie that if the melons were put on board the cars by July 13, 1886, on which day they were in fact on board, defendant would put them on the " Gate City " in time to transport them to Boston; and that upon this assurance, in the presence of this agent, the trade was closed between Skellie and Cooper & Harper.    Defendant objected to this evidence on the ground that it would add to or vary the bill of lading, which objection was sustained and the evidence excluded, to which ruling plaintiff excepted.    The plaintiff moved to amend his declaration by adding an allegation that the defendant failed to deliver the melons on board the steamer or transport them to Boston as it had contracted to do; and so as also to charge that Chamberlain & Co. refused to pay for the melons because not delivered on the steamer nor transported to them to Boston as agreed by defendant, and by reason of said failure plaintiff was unable to dispose of the melons.    These amendments were rejected by the court,

to which action the plaintiff excepted. He further moved to amend by striking out the allegation that defendant failed to deliver the melons on board the steamer; and this amendment also was rejected, to which action the plaintiff excepted. He also proposed to prove by the agent of defendant at Fort Valley that, at the time the bill of lading was delivered by the railroad in the presence and with the consent of the agent, the drafts were drawn on it, and bill and draft were both turned over to Cooper & Harper; and that the agent knew that they were the real owners of the bill of lading and watermelons. This testimony was rejected, to which ruling the plaintiff excepted.

On motion, the court then granted a nonsuit, to which ruling the plaintiff excepted.

·DUNCAN & MILLER and HARDEMAN & DAVIS, for plaintiff.

LYON & ESTES, for defendant.

BLANDFORD, Justice.

Skellie, for the use of Cooper & Harper, sued the railroad company for failing to deliver and transport on board the steamer " Gate City," which was to sail upon a certain day, three car-loads of watermelons, which he alleged had been delivered to the railroad company in time for that purpose. It appears that the watermelons were received by the company at a station on the line of its railroad; and the bills of lading state that they were " to be transported over this line to Boston," and delivered to the consignees at Boston, Messrs. Chamberlain & Co.; no particular route or method by which the melons should be carried being specified in the bills of lading. The watermelons reached Savannah after the departure of the " Gate City"; and thereupon, the rail-

road company telegraphed to Skellie, informing him of this fact, and requesting him to give instructions to forward the melons to New York, instead of to Boston. Skellie agreed to this, and they were shipped accordingly. He alleges that, by reason of this failure on the part of the railroad company to transport the melons to Boston as agreed, he sustained a considerable loss, the price obtained for them in New York being much less than would have been received if they had been duly delivered in Boston.

1. On the trial of the case, Skellie offered to prove " that Cooper & Harper consented to make said sale to Skellie (the sale of the watermelons, which were purchased from them by Skellie) only on condition that J. S. Chamberlain & Co. would accept said drafts (being drafts upon the consignees), and that Chamberlain & Co. agreed to accept said drafts only upon condition that said melons would be placed upon the ' Gate City ' at Savannah for transportation to them; that these facts were communicated to A. D. Skellie, the agent of the defendant at Fort Valley, who had solicited the shipment over the defendant's road, and that the defendant's said agent, after communicating with the authorities of the defendant at Savannah, assured plaintiff, T. O. Skellie, that if the melons were put on board the cars by the 13th of July, 1886, when in fact they were put on board said cars, that defendant would put them on board the ' Gate City' in Savannah in plenty time to transport them to Boston; that upon this assurance, in presence of said A. D. Skellie, said trade was closed between T. O. Skellie and Cooper & Harper." The defendant having objected to this evidence, on the ground that the same would add to or vary the bill of lading, the court sustained the objection, and refused to admit the evidence; to which ruling the plaintiff excepted and assigns the same as error.

We think that some of this testimony was admissible and some not admissible. In offering this testimony, as above set out, the plaintiff attempted to prove too much; he proposed to prove a great deal that had nothing to do with the contract between him and the railroad company. That the plaintiff bought the melons from Cooper & Harper, on condition that he was to draw upon Chamberlain & Co. and that they should accept his drafts, had nothing in the world to do with the contract between the plaintiff and the railroad company. And inasmuch as all this testimony was offered as a whole, that which was relevant not being separated from that which was irrelevant and inadmissible, we think the court did right to exclude it.

2. There were several propositions on the part of the plaintiff to amend his declaration; but the court refused to allow the amendments. We see no reason for the amendments; for the declaration was good as it stood. And while he had a right to amend in form or substance as he pleased, and the court had no right to refuse to allow him to amend, it seems to us, by the terms of his proposition to amend, that he would have amended himself out of court. It would seem that his purpose in amending was, to avoid what he conceived to be the consequences of his own act in having agreed, after the alleged breach of contract, to the change of destination of the melons. He seemed to apprehend that the result of this might be to relieve the company from liability. But in this he was mistaken. If there was a breach of contract by the railroad company, and the melons were afterwards, by his consent, shipped to New York and there sold at a loss, as alleged in this case, the shipment and the sale of the melons in New York was for the benefit of the railroad company, and it was their duty to make good his loss. He could have taken the watermelons in Savannah and sold them for whatever he

could get, after this breach occurred, if any did occur, and the railroad company would have been liable for his loss.   Under his declaration, he could have recovered, if he had proved what he proposed to prove by the agent of the railroad company, viz. that if the watermelons, after they were delivered to the agent, had been put on board the defendant's cars by a certain time, they would have reached Savannah in time to be shipped on the "Gate City" to Boston.   It was a question for the jury to determine, whether after the watermelons were delivered to the railroad company, they had sufficient time to transport them to Savannah and place them upon the steamer before its departure.   If this was true, and if there was a breach of the contract by the company in failing to deliver the melons on board the steamer in due time, any agreement that the plaintiff may have made afterwards as to the change of destination or consignment of the melons, was for the benefit of the railroad company; and he would be entitled to the damages occasioned by the breach.

3. The plaintiff also proposed to prove by the defendant's agent, " that at the time this bill of lading was delivered by the railroad, at the same time and in the same presence and with the consent of the agent of the railroad at Fort Valley, the draft was drawn upon the bill of lading in favor of Cooper & Harper, and the bill of lading and the draft both turned over in the presence of the railroad agent to Cooper & Harper, and the railroad agent knew Cooper & Harper were the real owners of the bill of lading and the watermelons"; which testimony, upon objection, was rejected.   We think that this testimony was irrelevant and that it was properly rejected.

4. Under the testimony, as it appears from the record in this case, we think the court was right in granting the nonsuit.

Judgment affirmed.